_____

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

Case No.: 22-12518-BB

_____

BAER'S FURNITURE COMPANY, INC.,

Plaintiff-Appellant,

v.

COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC,

Defendant-Appellee.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

_____

**CORRECTED ANSWER BRIEF OF APPELLEE**

HOLLAND & KNIGHT LLP
Rebecca M. Plasencia
Anna Marie Gamez
J. Raul Cosio
Jennifer Lada
Holland & Knight LLP
701 Brickell Avenue, Suite 3300 | Miami, Florida 33131
Phone 305.789.7695 | Fax 305.789.7799

*Baer's Furniture Co., Inc. v. Comcast Cable Communications Management, LLC*
Case No. 22-12518-BB

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure, undersigned counsel for Appellee, Comcast Cable Communications Management, LLC, gives notice of the following persons and entities who have an interest in the outcome of this case or appeal:

Baer's Furniture Co., Inc., *Plaintiff/Appellant*

Boises Schiller Flexner LLP, *Counsel for Plaintiff/Appellant*

Cannon, Aileen M., *District Court Judge for the Southern District of Florida*

Comcast Cable Communications Management, LLC, *Defendant/Appellee*

Cosio, J. Raul, *Counsel for Defendant/Appellee*

Gamez, Anna Marie, *Counsel for Defendant/Appellee*

Gray, Corey P., *Counsel for Plaintiff/Appellant*

Holland & Knight, LLP, *Counsel* for *Defendant/Appellee*

Lada, Jennifer, *Counsel for Defendant/Appellee*

Miller, James Fox, *Counsel for Plaintiff/Appellant*

Plasencia, Rebecca M., *Counsel* for *Defendant/Appellee*

Sires, Carlos M., *Counsel for Plaintiff/Appellant*

All others as listed by other parties in this matter.

*Baer's Furniture Co., Inc. v. Comcast Cable Communications Management, LLC*
Case No. 22-12518-BB

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Eleventh Circuit Rule 28-1(b), Appellee Comcast Cable Communications Management, LLC certifies that it is a limited liability company organized under the laws of the state of Delaware and its sole member is Comcast Holdings Corporation. Comcast Holdings Corporation is a corporation organized under the laws of the Commonwealth of Pennsylvania, and is a direct, wholly-owned subsidiary of Comcast Corporation. Comcast Corporation is a publicly traded company.

There are no additional publicly-held corporations that directly own 10% or more of the stock of Comcast Cable Communications Management, LLC. Comcast Corporation has no parent corporation and no publicly held corporation owns 10% or more of its stock.

Dated: December 13, 2022        */s/ Rebecca Plasencia*
                                Rebecca M. Plasencia

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is unnecessary for the resolution of this appeal. The legal issues presented to the Court are straightforward. There are limited facts involved in the appeal, and those are undisputed. Oral argument will not assist the Court in deciding the issues presented by the case.

## <u>TABLE OF CONTENTS</u>

**Page**

CERTIFICATE OF INTERESTED PERSONS .......................................................C-1

CORPORATE DISCLOSURE STATEMENT ......................................................C-2

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CITATIONS ........................................................................................ iv

STATEMENT OF JURISDICTION...........................................................................1

STATEMENT OF THE ISSUES.................................................................................2

STATEMENT OF THE CASE.....................................................................................3

 Statement of the Facts.......................................................................................3

 Course of Proceedings and Disposition Below ................................................6

 Standard of Review...........................................................................................12

SUMMARY OF THE ARGUMENT ......................................................................13

ARGUMENT ...........................................................................................................15

I. THE TERMS AND CONDITIONS APPLIED TO THE PARTIES' ENTIRE RELATIONSHIP .......................................................................15

 A. Jerry Baer signed the Terms and Conditions. .....................................16

 B. The Terms and Conditions applied to all geographical markets where Baer's advertised. ......................................................................19

II. THERE IS NO EVIDENCE OF A LEGALLY BINDING "SHORTFALL AGREEMENT"...................................................................23

 A. The Shortfall Agreement was not supported by proper consideration. ........................................................................................23

 B. The parties' "course of conduct" does not cure the absence of a legally binding "Shortfall Agreement." ..............................................27

ii

**TABLE OF CONTENTS**

**Page**

C.    The Shortfall Agreement did not comport with the modification clause in the Terms and Conditions. ...................................................29

D.    Alternatively, even if the "Shortfall Agreement" was a valid contract, Comcast did not breach it. ....................................................30

III.    THE INDEPENDENT TORT DOCTRINE PRECLUDES THE FRAUD CLAIMS ........................................................................................31

CONCLUSION ........................................................................................35

CERTIFICATE OF RULE 32(a)(7)(B) COMPLIANCE ........................................36

CERTIFICATE OF SERVICE ...............................................................37

# <u>TABLE OF CITATIONS</u>

**CASES**                                                           **Page**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).......................................................................12

*Barron v. Fed. Rsrv. Bank of Atlanta*,
129 F. App'x 512 (11th Cir. 2005).................................................17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).......................................................................25

*City of Valparaiso v. Long*,
141 So. 2d 334 (Fla. 1st DCA 1962)..............................................24

*Coletta v. Bank of New York Mellon*,
744 F. App'x 689 (11th Cir. 2018).....................................16, 21, 26

*Deauville Hotel Mgmt., LLC v. Ward*,
219 So. 3d 949 (Fla. 3d DCA 2017)...............................................31

*Drummond Coal Sales Inc. v. Kinder Morgan Operating LP "C"*,
836 F. App'x 857 (11th Cir. 2021)..................................................31

*Evers v. General Motors Corp.*,
770 F.2d 984 (11th Cir. 1985)........................................................25

*Flagship Resort Dev't Corp. v. Interval Int'l, Inc.*,
28 So. 3d 915 (Fla. 3d DCA 2010)............................................27, 28

*Ghodrati v. Miami Paneling Corp.*,
770 So. 2d 181 (Fla. 3d DCA 2000)...............................................33

*Gossett v. Du–Ra–Kel Corp.*,
569 F.2d 869 (5th Cir. 1978).........................................................25

*Int'l Star Registry of Illinois v. Omnipoint Mktg., LLC*,
510 F. Supp. 2d 1015 (S.D. Fla. 2007)...........................................33

## TABLE OF CITATIONS

**CASES**                                                                   **Page**

*James v. City of Montgomery*,
  823 F. App'x 728 (11th Cir. 2020),
  *cert. denied sub nom. James v. City of Montgomery, Alabama*,
  209 L. Ed. 2d 465, 141 S. Ct. 1688 (2021)....................................................25

*Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*,
  162 F.3d 1290 (11th Cir. 1998) ..........................................................28, 29

*Jurich v. Compass Marine, Inc.*,
  764 F.3d 1302 (11th Cir. 2014) ................................................................12

*Kendall Imports, LLC v. Diaz*,
  215 So. 3d 95 (Fla. 3d DCA 2017)...........................................................18

*King v. Bencie*,
  752 F. App'x 881 (11th Cir. 2018) ...........................................................33

*Lamm v. State St. Bank & Tr.*,
  749 F. 3d 938 (11th Cir. 2014) .................................................................33

*Leigh v. Warner Bros.*,
  212 F.3d 1210 (11th Cir. 2000) ................................................................25

*Loper v. Weather Shield Mfg., Inc.*,
  203 So. 3d 898 (Fla. 1st DCA 2015) ........................................................24

*Monteverde v. W. Palm Beach Food & Beverage, LLC*,
  2016 WL 1161224 (S.D. Fla. Mar. 24, 2016) ............................................18

*Novak v. Gray*,
  469 F. App'x 811 (11th Cir. 2012)............................................................33

*Onderko v. Advanced Auto Ins., Inc.*,
  477 So. 2d 1026 (Fla. 2d DCA 1985).......................................................18

*Peters v. Bower*,
  63 So. 2d 629 (Fla. 1953) ........................................................................28

*Princeton Homes, Inc. v. Virone*,
  612 F.3d 1324 (11th Cir. 2010) ................................................................28

<u>**TABLE OF CITATIONS**</u>

**CASES**                                                                                                                                                    **Page**

*Resol. Tr. Corp. v. Dunmar Corp.*,
    43 F.3d 587 (11th Cir. 1995) ............................................................16, 22, 26

*Spring Lake NC, LLC. v. Holloway*,
    110 So. 3d 916 (Fla. 2d DCA 2013)...............................................................18

*Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*,
    904 F. 3d 1197 (11th Cir. 2018) .....................................................................32

*Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*,
    110 So. 3d 399 (Fla. 2013) (Pariente, J., concurring) ...................................33

*Williams v. Peak Resorts Int'l Inc.*,
    676 So. 2d 513 (Fla. 5th DCA 1996)...............................................................33

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment of the United States District Court for the Southern District of Florida in favor of defendant/appellee Comcast Cable Communications Management, LLC ("**Comcast**") and against Baer's Furniture Co. Inc. ("**Baer's**").  This Court has jurisdiction to hear the appeal pursuant to 28 U.S.C. Section 1291.

## <u>STATEMENT OF THE ISSUES</u>

1.    Whether the District Court properly ruled on summary judgment that the "Terms and Conditions" signed by Baer's applied to the contractual relationship between Baer's and Comcast.

2.    Whether the District Court properly ruled on summary judgment that the "Shortfall Agreement" between Baer's and Comcast was not a legally binding agreement.

3.    Whether the District Court properly ruled on summary judgment that the independent tort doctrine barred Baer's fraudulent inducement claims against Comcast.

## STATEMENT OF THE CASE

### Statement of the Facts

Comcast is a media and technology company that offers cable television programming and advertising (R. 59, ¶ 2).  Baer's, a Florida furniture retailer, purchased advertisements from Comcast from 2002 to 2019 in four geographical market areas: Miami/Ft. Lauderdale, West Palm Beach, and Naples/Ft. Myers (the "Designated Market Areas" or "DMAs"), as well as Sarasota (the "Sub-DMA") (R. 59, ¶ 3).

On November 11, 2016, Jerry Baer, President of Baer's, electronically signed the "Advertiser Terms and Conditions" on behalf of Baer's (the "Terms and Conditions") (R. 60, ¶ 1; 60-1, 1; 60-2, 13-15; 75, ¶ 1).  As the district court found, the Terms and Conditions governed the contractual relationship between Baer's and Comcast at all relevant times (R. 60-1, 1).  In addition, toward the end of each year, the parties would negotiate sample "schedules" (also called "insertion orders")—which are television advertisements orders based on pre-negotiated terms—that were specific to each DMA and Sub-DMA for the following year (R. 60, ¶¶ 2–3; 75, ¶¶ 2–3; 60-5 (2017 schedule for West Palm Beach DMA); 60-6 (2018 schedule for West Palm Beach DMA); 60-7, 60-8, and 60-9 (2018 schedule for Sarasota).  The schedules/insertion orders specify the time of day, days of the week, and networks

3

where Baer's advertisements will run within the DMA or Sub-DMA (R. 64, ¶ 9; 76, ¶ 9).

In late 2018, Baer's requested a summary for 2017 and 2018 of the advertisement spots aired and spots ordered by Baer's along with the ratings for both years (R. 64, ¶ 11; 76, ¶ 11; 38, ¶ 27). In the industry, this type of summary is called a "post" (*Id.*). Because Baer's bought advertisements from Comcast on a discounted, spot basis and not on a "ratings" basis, Baer's was not contractually entitled to receive "posts" from Comcast; nevertheless, Comcast provided Baer's with the 2017 and 2018 "posts" in order to maintain good will with a longtime client (R. 38, ¶¶ 27, 30, 60-15, 3-5; 60-13, 3; 60-12, 7; 60-1; 60-5; 60-6; 60-7, 60-8, and 60-9). Baer's was unhappy with the ratings showed on the "posts," and as a result, to appease an unhappy client and provide good customer service, Comcast offered in good faith to run free-of-charge advertisements for Baer's in the Miami/Ft. Lauderdale, West Palm Beach, Naples/Fort Lauderdale DMAs and the Sarasota Sub-DMA, and offered to prioritize running Baer's advertisements (R. 60-12, 10-14). Comcast's offer to run advertisement free of charge for Baer's was done to keep a long-term customer happy and not as an admission that Comcast did not run advertisement as agreed upon in 2017 or 2018 (R. 60-12, 14).

Specifically, on February 26, 2019, Chris Oberholtzer, as VP/GM of Comcast Spotlight-Miami, sent a letter to Baer's stating that Comcast would "endeavor" to

run Baer's advertising moving forward at no charge until the audience short fall was made up (R. 64-3, 2). There were no parameters established or expectations as to these free advertisements set forth in the letter, which Baer's refers to as the "Shortfall Letter" (*Id.*; R. 60-3, 5). Notably, the Shortfall Letter never agreed with Baer's contention that Baer's had been guaranteed a certain number of ratings points in its contract; instead, Comcast only stated that it fell short in its stewardship of the relationship in not delivering a certain number of ratings points (R. 64-3, 2; 60-4, 19). "Stewardship" is a term used at Comcast to describe assisting the relationship with advertising agencies working on post-campaign reporting, maintenance of the media buy, helping the account executives with their business with the responsibility of maintaining client relationships, and providing great customer experience (R. 60-4, 3).

A few days later, on March 7, 2019, another Comcast employee advised Baer's via email that Comcast intended to code Baer's advertisements as "VIP" to have a greater chance of clearing in the networks that Baer's "covets" (R. 60-18, 2). The email did not include any parameters established or expectations as to these free advertisements offer to Baer's in 2019 (*Id.*). These two communications regarding any "shortfall" between the parties were nothing more than customer service exchanges in an attempt to support a long-standing relationship with an existing client (R. 64-3, 2; 60-18, 2; 60-12, 14).

5

Starting in or around December 2018 and for the next nine months after these communications were sent to Baer's, Comcast ran free advertisements for Baer's (R. 60-4, 17-18, 28-29; 60-12, 15, 17-18). Comcast also ran some of the advertisements on a VIP basis during television programming (R. 60-4, 23). Comcast did not accept any revenue from Baer's in 2019 in the Miami/Ft. Lauderdale and West Palm Beach DMAs (R. 60-4, 28). Comcast tried its best to run free advertisements to make up the under delivery weight "to satisfy a demanding, irrational client" (R. 60-14, 161; 60-3, 6, 8). The free advertisements, however, became unsustainable for Comcast (R. 60-3, 5). On September 16, 2019, Comcast informed Baer's that Comcast would no longer run advertisements free of charge, and instead would resume running advertisements for Baer's as agreed upon by the parties in the Terms and Conditions (R. 60-19, 2; 60-3, 7-8).

### Course of Proceedings and Disposition Below

Baer's filed a complaint against Comcast in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County on August 3, 2020 (R. 1, 9-21). Comcast removed the action to the United States District Court for the Southern District of Florida on the basis of diversity jurisdiction (R. 1, ¶ 3). After the district court dismissed the First Amended Complaint in part, Baer's filed the operative Second Amended Complaint, asserting eight claims against Comcast: Breach of the 2017 Miami/Ft. Lauderdale DMA Agreement (Count I), Breach of the 2018

Miami/Ft. Lauderdale DMA Agreement (Count II), Breach of the 2017 West Palm Beach DMA Agreement (Count III), Breach of the 2018 West Palm Beach DMA Agreement (Count IV), Breach of the Shortfall Agreement (Count V), Fraud in the Inducement for the Miami/Ft. Lauderdale and West Palm Beach Agreements (Count VI), Fraud in the Inducement for the Shortfall Agreement (Count VII), and Fraud in the Inducement for the Sarasota Agreement (Count VIII) (R. 38).

On March 17, 2022, Comcast filed a Motion for Summary Judgment on all counts (R. 61), and Baer's filed its own Motion for Summary Judgment on Count V alone. At the core of its Motion for Summary Judgment, Comcast relied on the Terms and Conditions to show that, based on the negotiated terms between the parties, summary judgment was warranted because all of Baer's claims were untimely under the shortened limitations period agreed to by the parties in the Terms and Conditions, and Baer's claims were improper pursuant to various other provisions and disclaimers in the Terms and Conditions. Comcast also moved for summary judgment on Count V on the ground that the Shortfall Agreement was not a valid contract and that, even if it was, the undisputed material facts show that no breach of the purported Shortfall Agreement occurred; and Comcast moved for summary judgment on Counts VI and VII on the grounds that the fraud in the inducement claims were barred by the independent tort doctrine and that the undisputed, material facts show that no fraud occurred.

7

In response, Baer's contended that the Terms and Conditions only applied to the West Florida DMA and not the entire contractual relationship between the parties. Baer's argued that (1) the subject line of the cover email transmitting the Terms and Conditions, "Baer's Furniture Company Annual 2017 Agreement – WF," contains the initials "WF" and thus references "West Florida" (R. 74, 8); (2) the Terms and Conditions were executed by Fran Perpich, Comcast's regional account executive for the West Florida market, and Jerry Baer averred in his declaration that his "interactions with Ms. Perpich related solely to the Ft. Myers DMA contract and did not relate to the contracts for other parts of Florida" (R. 75-10, ¶ 4); and (3) Jerry Baer further swore in his declaration that he did not understand that the Terms and Conditions "would govern my separate, future agreements with Comcast concerning the non-West Florida markets" (R. 75-10, ¶ 5; 74, 8-10). Baer's made this argument notwithstanding that some of the schedules for other DMAs that were not related to the West Florida markets also referenced the "Terms and Conditions on file" (R. 60-5, 3). Instead, Baer's argued that its longstanding business relationship with Comcast, which began in 2002, was based on oral agreements (R. 75, 1).

Upon review of the evidence and case law, the district court agreed with Comcast that the Terms and Conditions applied to the parties' entire contractual relationship based on the plain language of the terms (R. 94, 10). The district court

8

found the Terms and Conditions confirmed that they govern each "insertion order" (also referred to as "schedules") negotiated between the parties:

> The following are the terms and conditions on which Comcast Spotlight, LP or Comcast Affiliates (defined below) will distribute advertisements via linear spot cable which may include interactive overlays or functionality, video on demand, and/or websites that Comcast or Comcast Affiliates own, operate, host, or distribute ads on pursuant to one or more insertion order that the parties may negotiate from time-to-time. ***As used herein, the term Contract shall mean these Terms and Conditions, together with any IO***….

(R. 60-1, 1) (emphasis added). Paragraph 11(h) of the Terms and Conditions also contains an integration or merger clause, stating that "[t]his Contract contains the entire agreement between the parties relating to the subject matter hereof" (R. 60-1, 9). Moreover, some of the schedules/insertion orders directly referenced and incorporated the "terms and conditions already on file" (R. 60-5, 3; 60-9, 8).

The district court also found that if it were to "examine matters outside of the four corners of the written agreement, Baer's proffered evidence purporting to limit the scope of the Terms and Conditions fails to create an issue of material fact as to the applicability of the Terms and Conditions" (R. 94, 11). The district court noted that, for example, Baer's provided no evidence to explain why the letters "WF" would limit the contractual terms (R. 94, 11) and no evidence showing that Ms. Perpich lacked the authority or was otherwise unable to execute agreements for Comcast beyond the West Florida region (R. 94, 11). In addition, the district court

9

held that Baer's offered no evidence that would show the essential terms of the parties' agreement if the Terms and Conditions did *not* apply (R. 94, 11) because the Schedules contain no essential terms that would form the basis of a breach of contract claim (R. 94, 11; 60-5, 60-6, 60-7, 60-8, 60-9). The district court dismissed Baer's "new theory" that the schedules are separately governed by various "oral agreements" as unsupported by the evidence (R. 94, 11; 75, ¶ 2). Accordingly, the district court found that the Terms and Conditions governed the entire relationship between Baer's and Comcast. Pursuant to the Terms and Conditions, the district court found <u>all</u> of Baer's claims untimely because Paragraph 11(i) of the Terms and Conditions, which contained a New York choice-of-law provision, shortened the time to bring a lawsuit arising out of or relating to transactions under the Terms and Conditions to 120 days (R. 94, 12-16). Because Baer's did not bring an action within the 120-day timeframe agreed upon by the parties, the district court determined that summary judgment was warranted on all of Baer's claims (R. 94, 12-16). At the summary judgment stage, Baer's alternatively argued that the parties had entered into a new, legally binding "Shortfall Agreement" in 2018, and that Comcast breached the agreement when it stopped running Baer's advertisements free of charge and on a VIP basis in 2019. Upon review of the evidence and the case law, the district court found that the purported "Shortfall Agreement" did not constitute a valid contract because it lacked consideration (R. 94, 18-19). Although Baer's

10

contended that the consideration for Comcast to provide free advertising was "forgoing legal action," the district court found that nothing in the record supports that Baer's communicated any such forbearance in the first place, and no evidence that it communicated such forbearance to Comcast (R. 94, 19). The district court also reasoned that the "Shortfall Agreement" would not comport with the modification clause of the Terms and Conditions, which requires that any modification to the agreement be signed by the parties (*Id.*). None of the correspondence in the record regarding the "Shortfall Agreement" is signed by Baer's (*Id.*). Accordingly, the "Shortfall Agreement" does not constitute a legally enforceable contract (*Id.*).

Lastly, the district court also dismissed Baer's fraud claims based, alternatively, on the independent tort doctrine (R. 94, 20-22). Baer's brought fraud claims based on allegations that Comcast misrepresented that its contracts were based on Nielsen ratings to induce Baer's to contract with it (R. 74, 22). The district court found that the independent tort doctrine applies to preclude to fraud claims because Baer's cannot meaningfully distinguish the fraud allegations from the heart of the contractual agreement (R. 94, 20-22). The district court also found that the fraud claims failed to show a false statement concerning material fact (R. 94, 21-22).

On June 23, 2022, the district court granted Comcast's Motion for Summary Judgment (R. 94), and entered a final judgment in favor of Comcast on all counts (R. 95).

## Standard of Review

A review of a district court's grant of summary judgment is reviewed de *novo*, "viewing all facts and reasonable inferences in the light most favorable of the non-moving party." *Jurich v. Compass Marine, Inc.*, 764 F.3d 1302, 1304 (11th Cir. 2014). "Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* An issue of fact is "material" only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## SUMMARY OF THE ARGUMENT

This appeal challenges the summary judgment order that disposes of all claims by Baer's against Comcast.  First, Baer's contends the district court erred by granting summary judgment on all of its claims based on detailed findings that Baer's did not bring a timely action pursuant to the binding Terms and Conditions that Baer's had admittedly signed.  On appeal, Baer's contests the finding that the Terms and Conditions govern the parties' contractual relationship.  The Terms and Conditions, however, undeniably apply to this matter.  Baer's CEO signed the Terms and Conditions; the language of the Terms and Conditions and the parties' schedules/insertion orders confirm that the Terms and Conditions apply to the parties' entire relationship; and Baer's failed to identify any material facts that would limit the scope of the Terms and Conditions.

Second, Baer's contests the district court's alternative finding that the "Shortfall Agreement" was not a legally binding agreement between the parties. This agreement, however, was not supported by proper consideration, was based on an illusory promise that Comcast would "endeavor" to run free advertisements for an unspecified amount of time, and contained none of the essential terms necessary to form an enforceable, binding agreement.  In addition, as the district court properly found in the alternative, such an agreement would violate the modification clause of the Terms and Conditions because the parties never signed the purported Shortfall

13

Agreement, which Baer's had stated in its Answers to Interrogatories consisted of the February 26, 2019 letter and a subsequent March 7, 2019 email (R. 60-16, 6). Moreover, even if such agreement existed, the undisputed evidence shows that Comcast did not breach such agreement as it did in fact "endeavor" to run Baer's advertising at no charge moving forward for over eight months.

Finally, Baer's appeals the district court's alternative finding on summary judgment that, in addition to being time-barred, Baer's claims fraud claims are barred by the independent tort doctrine. Even a cursory review of the fraud claims shows that the fraud claims are based on the same allegations brought by Baer's against Comcast for breach of contract in Counts I-IV, thereby triggering the independent tort doctrine.

The district court rejected Baer's efforts to evade the contractual terms it negotiated with Comcast. This Court should do the same and affirm the district court'**s judgment.**

# ARGUMENT

Baer's presented no evidence in this case to support its breach of contract and fraud claims. Recognizing that Baer's failed to produce any evidence establishing the basic elements of its claims, the district court granted summary judgment in favor of Comcast. This Court should affirm that decision.

## I. THE TERMS AND CONDITIONS APPLIED TO THE PARTIES' ENTIRE RELATIONSHIP

In this appeal, Baer's has done little to cast doubt on the propriety on the district court's ruling that the Terms and Conditions applied to the parties' relationship. Baer's first contends that there is no evidence that Jerry Baer signed the Terms and Conditions. Baer's failed to bring this argument prior to this appeal—and in fact Baer's *admitted* to signing the Terms and Conditions on summary judgment (R. 60, 2; 75, 1). The Court should not entertain a novel (and unsupported) argument on appeal.

Next, Baer's contend that there is a genuine dispute of fact as to whether the Terms and Conditions only applied to the West Florida market. The district court swiftly disposed of this argument on summary judgment and so should this Court. The evidence is uncontroverted that the Terms and Conditions applied to all markets where Baer's advertised with Comcast and Baer's has shown no evidence that would limit the Terms and Conditions to a particular sub-region. Accordingly, the Court should affirm the district court's ruling in favor of Comcast on all Counts.

### A.    Jerry Baer signed the Terms and Conditions.

Baer's contends that there is no evidence of Jerry Baer signing the Terms and Conditions.  Baer's states: "[t]he District Court found that "[o]n November 11, 2016, Jerry Baer, President of Baer's, signed a document titled 'Advertiser Terms and Conditions' on behalf of Baer's…" but that "whether Baer's ever signed that document is a disputed issue of fact that cannot be resolved on summary judgment." App. Br., 16.  That statement is not accurate.

Baer's admitted on summary judgment that Jerry Baer signed the Terms and Conditions.  In its statement of undisputed facts, Comcast alleged that "Jerry Baer signed the Advertiser Terms and Condition on November 11, 2016 on behalf of Baer's (the "Terms and Conditions")" (R. 60, 2).   Baer's responded with "**Undisputed**" (R. 75, 1) (emphasis added).

For the first time on appeal, Baer's attempts to evade the signature by arguing that Jerry Baer signed the "Certificate of Completion," not the Terms and Conditions, and that there is no evidence that the document attached to the certificate was the Terms and Conditions (App. Br., 17).  Because Baer's did not make this argument before the district court, the Court should decline to evaluate that argument on the merits.  *Coletta v. Bank of New York Mellon*, 744 F. App'x 689, 690 (11th Cir. 2018); *see also Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (noting that "the onus is upon the parties to formulate arguments;

grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned" and declining to exercise discretion to entertain new argument not "fairly presented to the district court"). This Circuit has delineated five instances where an issue or argument that was not raised below could be reviewed on appeal: "(1) it involves "a pure question of law if the refusal to consider it would result in a miscarriage of justice"; (2) the objection is not raised in the court below because "the appellant had no opportunity to raise the objection"; (3) "there is at stake a substantial interest of justice"; (4) "the proper resolution is beyond any doubt"; and (5) "if the issue presents significant questions of general impact or great public concern." *Barron v. Fed. Rsrv. Bank of Atlanta*, 129 F. App'x 512, 520 (11th Cir. 2005). None of these instances are present here. Baer's asks this Court, for the first time, to review an issue of pure fact that cannot be resolved "beyond any doubt," does not involve a "substantial interest of justice" or question of "great public concern," and was not a result of Baer's having no opportunity to raise the issue below. Furthermore, because Baer's did not raise this argument on summary judgment, Comcast was unable to introduce evidence to counter this argument. It would thus be prejudicial for this Court to entertain this novel argument at this stage.

In any event, a cursory review of the Certificate of Completion (R. 60-1) shows that it relates to the "Annual 2017 Agreement" that was e-signed by Jerry

Baer on November 11, 2016.  Any other reading of this certificate leads to an absurd result, where Jerry Baer would have signed a meaningless document.

In a last-ditch effort, Baer's contends that a material issue of fact exists because Jerry Baer testified he has "no specific recollection of signing the cover sheet to the 'Terms and Conditions'" (App. Br., 22).  Again, this is refuted by Baer's own admission below that it was "undisputed" that Baer's executed the Terms and Conditions and by the fact that Mr. Baer admitted that the Terms and Conditions were sent to his email address and that he alone would have signed the document. Regardless, it is well-established in Florida that one who signs an agreement is generally bound by it. *Kendall Imports, LLC v. Diaz*, 215 So. 3d 95, 100 (Fla. 3d DCA 2017). "Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding." *Id.*  (citing *Spring Lake NC, LLC. v. Holloway,* 110 So. 3d 916, 917 (Fla. 2d DCA 2013)).  Although Jerry Baer claims he does not recall the content of the agreement, "a party has a duty to learn and know the contents of an agreement before signing it." *Onderko v. Advanced Auto Ins., Inc.*, 477 So. 2d 1026, 1028 (Fla. 2d DCA 1985); *Monteverde v. W. Palm Beach Food & Beverage, LLC*, 2016 WL 1161224, at *5 (S.D. Fla. Mar. 24, 2016) (finding inability to fully understand specific terms or components of the agreement does not preclude enforcement of contract).  Put simply, Baer's is bound

by the document that it signed.

As the district court noted, Baer's offered no meaningful evidence that the Terms and Conditions do not apply in this case.  Baer's is a sophisticated business that willingly and knowingly entered into a negotiated, written agreement with Comcast.  It cannot seek to evade its negotiated contractual obligations, rights, and duties by disregarding the Terms and Conditions.  The district court properly granted summary judgment in favor of Comcast based on the application of the Terms and Conditions.

**B.  The Terms and Conditions applied to all geographical markets where Baer's advertised.**

Baer's disputes the district court's findings that the Terms and Conditions apply to all of the DMA markets where Baer's advertised.  The district court found that the Terms and Conditions, by their plain language, show, in at least three instances, that they were intended to apply to all markets:

1.  The Terms and Conditions provide that they govern the parties' schedules (R. 60-1, 3);

2.  Paragraph 11(h) of the Terms and Conditions contains an integration or merger clause, stating that "[t]his Contract contains the entire agreement between the parties relating to the subject matter hereof" (R. 60-1, 9); and

3. Some of the schedules themselves reference the Terms and Conditions (R. 60-5, 3 ("By signing this contract, I agree to the full terms and conditions already on file.") (West Palm Beach DMA); R. 60-9, 8 (same) (Sarasota Sub-DMA), R. 94, 9-11)).

According to Baer's, the district court erred in its judgment when it ended its analysis to the language of the Terms and Conditions and refused to look at the circumstances surrounding the Terms and Conditions, including the Certificate of Completion (App. Br., 27). In fact, Baer's states that the district court "refused to consider Baer's extrinsic evidence" (App. Br, 31). That statement is not accurate.

In its summary judgment order, the district court acknowledged extrinsic evidence, and made specific, alternative findings regarding these purported extrinsic circumstances. The district court found that if it were to "examine matters outside of the four corners of the written agreement, Plaintiff's proffered evidence purporting to limit the scope of the Terms and Conditions fails to create an issue of material fact as to the applicability of the Terms and Conditions" (R. 94, 11). The district court noted that, for example, Baer's provided no evidence to explain why the letters "WF" would limit the contractual terms (R. 94, 11) and no evidence showing that Ms. Perpich lacked the authority or was otherwise unable to execute agreements for Comcast beyond the West Florida region (R. 94, 11). In addition, the district court found that Baer's offered no evidence that would show what the

essential terms of the parties' agreement were if the Terms and Conditions did *not* apply because the Schedules contain no essential terms that would form the basis of a breach of contract claim (R. 94, 11; 60-5, 60-6, 60-7, 60-8, 60-9).   The district court dismissed Baer's "new theory" that the schedules are separately governed by various "oral agreements" as unsupported by the evidence (R. 94, 11; 75, ¶ 2).   Accordingly, the district court found that the Terms and Conditions applied between Baer's and Comcast because of both (1) the plain language of the terms and (2) the circumstantial evidence, or lack thereof.

On appeal, Baer's attempts to manufacture a material issue of fact by pointing to one of the schedules that expressly refers to the Terms and Conditions (App. Br, 31-34).   According to Baer's, as opposed to some of the other schedules at issue in this litigation, one of the 2017 West Palm Beach schedule is "unsigned," and contains "no markings that show it was 'approved' or signed by anyone at Baer's," and accordingly, there is a genuine issue of material fact that the Terms and Conditions applied to the East Florida agreements (App. Br, 32-34).   Because Baer's did not bring this purported "issue" on summary judgment, this Court should decline to entertain this new argument. *Coletta v. Bank of New York Mellon*, 744 F. App'x

689, 690 (11th Cir. 2018); *see also Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).[1]

In any event, Baer's argument is moot.  The Terms and Conditions do not require schedules to be "marked" for them to be approved by the parties.  The Terms and Conditions state that "an IO will be deemed binding only upon (i) signature by both parties or (ii) *in the case of an IO signed only by Advertiser, the display of the first Ad by Comcast (unless otherwise specified in the IO)*" (R. 60-1, 3) (emphasis added).  The schedule that Baer's disputes was used to display advertisements in 2017, and thus, the schedules are binding despite not being "marked."  Moreover, the schedules were merely used as an example of an express reference to the Terms and Conditions in the parties' schedules.  Evidently, and as the district court reasoned, without the Terms and Conditions, there is no other document specifying the essential terms of the parties' agreement (R. 94, 11), and the schedules would have no meaning without the essential terms of the parties' agreement as set forth in the Terms and Conditions.  Accordingly, Baer's has failed to raise a genuine issue of fact showing that the Terms and Conditions do not apply to all geographical market between the parties.

---

[1] On summary judgment, Baer's pointed out, in passing and in a footnote, that this Schedule was unsigned (R. 74, 10).  Baer's did not, however, make the argument that because another 2017 West Palm Beach Schedule was in fact signed, that this Schedule was not approved.

## II. THERE IS NO EVIDENCE OF A LEGALLY BINDING "SHORTFALL AGREEMENT"

The district court granted summary judgment on all counts based on the application of the Terms and Conditions, which contained a provision requiring Baer's to bring a lawsuit within 120 days. In addition, the district court granted summary judgment on Count V (Breach of the Shortfall Agreement) based on alternative, independent grounds, three of which are disputed by Baer's on appeal. None of Baer's contentions, however, is supported by the record or the law. Accordingly, the Court should affirm the district court's alternative grounds granting summary judgment in favor of Comcast on Count V.

### A. The Shortfall Agreement was not supported by proper consideration.

According to Baer's, the "Shortfall Agreement" was supported by Baer's forbearance of legal action and continuing to do business with Comcast. The district court reviewed the record on this point and concluded that (1) there is no evidence in the record that Baer's made such forbearance, and (2) there is no evidence in the record that Baer's communicated such forbearance to Comcast (R. 94, 16-20). The Court should affirm these findings and reject Baer's after-the-fact attempt to artificially create a record of "material issues of fact."

Although an agreement to forgo legal action generally constitutes valid consideration for a contract, such forbearance must be "requested" <u>and</u> "must be

communicated to the other party, however, to qualify as consideration for contract." *Loper v. Weather Shield Mfg., Inc.*, 203 So. 3d 898, 904 (Fla. 1st DCA 2015) (internal quotation marks omitted); *City of Valparaiso v. Long*, 141 So. 2d 334, 335 (Fla. 1st DCA 1962) ("The rule is well recognized that the forbearance to enforce a legal right is sufficient consideration for a promise where such forbearance is requested.").

As the district court found, Baer's pointed to nothing in the record that showed (1) that Baer's requested any such forbearance, or (2) that Baer's communicated its forbearance from legal action to Comcast (R. 94, 19). On appeal, Baer's attempts to create an issue of fact by referencing three isolated statements that, according to Baer's, shows that the "Shortfall Agreement" was entered into in exchange for Baer's not seeking legal action against Comcast. None of these statements are sufficient to raise an issue of material fact.

First, Comcast CEO Jerry Baer proffered in a sworn declaration for the purpose of summary judgment that "when Comcast admitted it breached the 2017 and 2018 agreements for the Miami/Ft. Lauderdale and West Palm Beach DMAs, I threatened to sue Comcast for the breach. In response, Comcast offered to run advertising at no cost to Baer's to 'make up' for what it called its 'shortfall' in delivering ratings points in 2017 and 2018" (R. 75-10, 2). This sweeping, conclusory allegation, provided in a declaration at the summary judgment stage,

does not create a material issue of fact because it is self-serving and conclusory.  As this Court held, "[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value." *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (citing *Evers v. General Motors Corp.,* 770 F.2d 984, 986 (11th Cir. 1985)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986) (White, J., concurring) ("It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case.").  "[O]ne who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial." *Id.* (quoting *Gossett v. Du–Ra–Kel Corp.,* 569 F.2d 869, 872 (5th Cir. 1978)).  The district court did not err in disregarding this self-serving, conclusory allegation that failed to provide any of the purported specific facts surrounding this "forbearance of legal action." *James v. City of Montgomery*, 823 F. App'x 728, 731 (11th Cir. 2020), *cert. denied sub nom. James v. City of Montgomery, Alabama*, 209 L. Ed. 2d 465, 141 S. Ct. 1688 (2021) (concluding that court properly disregarded statement that "were conclusory allegations that had no probative effect because they were not based on specific facts").

Next, Baer's attempts to rely on two statements made during depositions by Comcast employees.  Although neither support Baer's argument on appeal, it should

be noted that on summary judgment Baer's *failed* to provide these two statements to Comcast or the court (R. 74, 20; 75, 13 (¶68), 14 (¶75), 16-17 (¶¶93, 95)). Because Baer's did not make this argument before the district court, the Court should decline to evaluate this novel issue on the merits. *Coletta v. Bank of New York Mellon*, 744 F. App'x 689, 690 (11th Cir. 2018); *see also Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)

Nevertheless, a cursory review of the two statements show that they do not support Baer's argument. First, an employee of Comcast, Michael Elberg, stated during his deposition that Jerry Baer "threatened legal action if we don't do as he wishes" (R. 75-3, 180-81). Second, Mr. Oberholtzer, another employee of Comcast, was asked in his deposition, "Notwithstanding what you feel about the Nielsen data, the fact is that there was a number presented to Mr. Baer's [sic] by Comcast and Mr. Baer agreed to it, and that was the number that – a points shortfall that was going to be made up through free posts, or I should say, spots, correct?" to which Mr. Oberholtzer responded, "I agree with that. Correct" (R 64-22). Neither of these vague and ambiguous statements provide the specific, factual context necessary to understand what the forbearance of legal action was and that it was properly communicated to Comcast with the "Shortfall Agreement" in mind. Therefore, Baer's failed to elicit any testimony of this "forbearance" in discovery. Because the uncontroverted evidence shows that the "Shortfall Agreement" lacked consideration,

the district court properly found that the "Shortfall Agreement" was not a legally binding agreement.

**B.    The parties' "course of conduct" does not cure the absence of a legally binding "Shortfall Agreement."**

Baer's contends that even if the parties did not intend to enter into a legally binding "Shortfall Agreement," the parties' subsequent "course of conduct" can cure the lack of mutuality of obligation and render the "Shortfall Agreement" a legally binding agreement.  This argument misstates the law.

Baer's reliance on *Flagship Resort Dev't Corp. v. Interval Int'l, Inc.*, 28 So. 3d 915, 921 (Fla. 3d DCA 2010), is misplaced.  There, the parties entered into a written contract, which both parties performed for over 15 years.  The written contract allowed *Interval Network* to modify the agreement at its sole discretion. *Flagship* argued that this term rendered the entire agreement illusory.  The court rejected this argument finding that (1) *Interval*'s promise to perform the duties under the agreement was not a mere "***I will if I want to***," because under the terms of the agreement themselves, failure to perform would have entitled *Flagship* to seek the remedies provided by the agreement; and (2) the parties had performed the agreement fully for over 15 years.  *Id.* at 922 (emphasis added).

This case is inapplicable to the "Shortfall Agreement."  There is no written "Shortfall Agreement," no consideration, and no essential terms.  At best, Comcast stated that it would "endeavor" to run free advertising for Baer's and that it intended

27

to code Baer's Spots as "VIP" to give the free Spots a greater chance of airing, but these statements are too uncertain and indefinite to constitute a binding promise (R. 64-3, 2; 60-18, 2). There were no parameters set up or expectations as to these free Spots (*Id.*; R. 60, 10-11). Accordingly, and contrary to the parties in *Flagship*, Comcast's statements that it would "endeavor" to deliver free advertising imposed no obligation whatsoever on Comcast: in other words, "it will if it wants to." Moreover, unlike in *Flagship*, there was no written agreement, no negotiated remedies, and full performance under the agreement. A contract is illusory under Florida law when "one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor—who says, in effect, 'I will if I want to.'" *Princeton Homes, Inc. v. Virone*, 612 F.3d 1324, 1331 (11th Cir. 2010) (citing *Johnson Enters. Of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1311 (11th Cir. 1998)). A mere "intention" to do a certain thing will not itself create a contract. *Peters v. Bower*, 63 So. 2d 629, 629 (Fla. 1953).

Even if a "conveyance of a promise to perform under the "Shortfall Agreement" was sufficient to show mutual assent for a legally binding contract, the record is devoid of any such "promises." Baer's attempts to manufacture a record of the purported terms of the "Shortfall Agreement" by selectively pointing to statements from Comcast employees (App. Br., 39-40). For example, it is unclear how a statement from a Comcast employee that "*I will be here to ensure that the*

*plan is implemented*" amounts to an "affirmative" legal promise as alleged by Baer's.  It is also unclear why providing a regular update to Baer's about the free advertisement would constitute a "conveyance" and "assent" to its "promise to perform" under a legally binding agreement (*Id.*).

At best, the record shows that the communications regarding any "shortfall" between the parties were nothing more than customer service exchanges to support a relationship with an existing client (R. 60, 11)—they do not create any binding duty on Comcast. "An illusory promise does not constitute consideration for the other promise, and thus the contract is unenforceable against either party." *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1311 (11th Cir. 1998).  Because the purported "Shortfall Agreement" is on its face illusory and unenforceable, the district court properly granted summary judgment in favor of Comcast on Count V on this additional alternative ground.

### C.    The Shortfall Agreement did not comport with the modification clause in the Terms and Conditions.

As a third alternative basis for entering summary judgment on Count V, the district court noted that the "Shortfall Agreement" was not a legally binding agreement because it did not comport with the modification clause in the Terms and Conditions.  The modification clause required that all modifications to the parties' agreement be in writing and signed by the parties; and yet no such signed writing

29

exists as to the purported "Shortfall Agreement" (R. 60-1, 9). Baer's continues to misconstrue the district court's order by contending the following:

> The district court found that Comcast was entitled to summary judgment as to the Shortfall Agreement because it did not "comport with the modification clause in the Terms and Conditions." (D.E. 94 at 10.) ***This ruling was predicated on the erroneous finding that the Shortfall Agreement is an IO even subject to the Advertiser Terms and Conditions***.

(App. Br., 35). The district court never made such a finding. Instead, the district court properly reasoned that because "the Terms and Conditions govern the parties' entire relationship, the Shortfall Agreement necessarily would constitute a modification of the Terms and Conditions" (R. 94, 19). In fact, according to Baer's, the "Shortfall Agreement" modified the contractual obligations between Baer's and Comcast by requiring Comcast to provide free VIP advertisements to Baer's for an undetermined period of time. But none of the communications in the record regarding the "Shortfall Agreement" is signed by Baer's. Accordingly, because the "Shortfall Agreement" does not comport with the modification clause of the Terms and Conditions, the district court properly found, as an additional basis, that the "Shortfall Agreement" does not to constitute a legally enforceable contract.

### D. Alternatively, even if the "Shortfall Agreement" was a valid contract, Comcast did not breach it.

Alternatively, even if a valid "Shortfall Agreement" existed, the evidence shows that, at best, Comcast did not breach the agreement because, in the agreement, Comcast stated that it would "endeavor" to run free Spots for Plaintiff; and Comcast

did in fact do so for almost eight months.

Baer's must show the following elements to prevail on a breach of contract claim: (1) the existence of a valid contract; (2) material breach of the agreement; and (3) damages. *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2017); *Drummond Coal Sales Inc. v. Kinder Morgan Operating LP "C"*, 836 F. App'x 857, 876–77 (11th Cir. 2021). Here, even if a "Shortfall Agreement" existed, the undisputed facts show that Comcast performed under the agreement. Indeed, commencing in or around December 2018 and for the next nine months, Comcast did in fact run free Spots for Baer's (R. 60, ¶ 48(a)). Comcast also ran some of the Spots on a VIP basis during television programming (R. 60, ¶ 48(b)). Comcast also did not accept any revenue from Baer's in 2019 in the Miami/Ft. Lauderdale and West Palm Beach DMAs (R. 60, ¶ 48(c)). And as testified by Comcast's representatives, Comcast tried its best to run free Spots to make up the under delivery weight "to satisfy a demanding irrational client" (R. 60, ¶ 48(d)).

Accordingly, because the "Shortfall Agreement" at best, required Comcast to "endeavor" to run free Spots for Baer's, and Comcast did so, there is no breach of contract. The district court did not err in granting summary judgment on Count V.

## III. THE INDEPENDENT TORT DOCTRINE PRECLUDES THE FRAUD CLAIMS

The district court also properly granted summary judgment on Baer's claims for fraud based on the independent tort doctrine. The district court dismissed the

fraud claims because the Terms and Conditions barred all of Baer's claims; but alternatively, the district court also found that the independent tort doctrine bars Baer's fraud claims because they were based on the same allegations as the breach of contract claims (R. 94, 20-22).

On appeal, Baer's makes the same, simplistic arguments as the one introduced at the summary judgment stage: according to Baer's, the breach of contract and fraud claims are not "duplicate" because in the fraud claims, Baer's alleged that Comcast fraudulently induced Baer's into entering into the agreements by misrepresenting that the "ratings" were based on Nielsen Audience Estimates.

Neither on appeal nor at the summary judgment stage, however, does Baer's explain how these fraud allegations differ in any way from the breach of contract claims. Indeed, in the breach of contract claims, Baer's alleged that Comcast breached its agreements by failing to deliver "ratings" based on Nielsen Audience Estimates. In other words, the fraud claims are based on the allegation that Comcast did not intend to properly perform the agreement. As the district court properly held, this is legally improper. *See Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F. 3d 1197, 1223 (11th Cir. 2018) ("Under Florida law, misrepresentations relating to the breaching party's performance of a contract do not give rise to any independent cause of action in tort, where such misrepresentations are interwoven and indistinct from the heart of the contractual agreement.") (internal

quotation marks and alterations omitted); *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 408-09 (Fla. 2013) (Pariente, J., concurring); *see also Lamm v. State St. Bank & Tr.*, 749 F. 3d 938, 947 (11th Cir. 2014); *King v. Bencie*, 752 F. App'x 881, 883 (11th Cir. 2018) (per curiam).  In practice, the independent tort doctrine "bars a plaintiff from raising a tort cause of action that restates a breach of contract cause of action.  For a tort claim to stand, it must be independent of the breach of contract claim."  *Id.*  Moreover, "one cannot avoid the economic loss rule by merely labeling a claim as fraud in the inducement" because "the fraud must be separate and distinct from the breach party's performance of the contract."  *Int'l Star Registry of Illinois v. Omnipoint Mktg., LLC*, 510 F. Supp. 2d 1015, 1025 (S.D. Fla. 2007).  Furthermore, under Florida law, "[a] plaintiff ... may not recover damages for fraud that duplicate damages awarded for breach of contract."  *Novak v. Gray*, 469 F. App'x 811, 818 (11th Cir. 2012) (quoting *Ghodrati v. Miami Paneling Corp.,* 770 So. 2d 181, 183 (Fla. 3d DCA 2000) and *Williams v. Peak Resorts Int'l Inc.,* 676 So. 2d 513, 517 (Fla. 5th DCA 1996) ("It is well settled that a party may not recover damages for both breach of contract and fraud unless the party first establishes that the damages arising from the fraud are separate or distinguishable from the damages arising from the breach of contract.")).

Here, Plaintiff's fraud claims seek the <u>same</u> damages as the breach of contract claims (R. 38, 15, Prayer for Relief) and are based on the same factual allegations.

In addition, in the fraud claims, Plaintiff alleges that Comcast made misrepresentations to Plaintiff about the fact that the "ratings" were based on Nielsen Audience Estimates—while in its breach of contract claims, Plaintiff alleges that Comcast breached its agreement by failing to deliver "ratings" based on Nielsen Audience Estimates. In other words, the fraud claims are based on the allegation that Comcast did not intend to properly perform the agreement. This is legally improper.

In fact, Baer's first iteration of the complaint labelled Counts Six through Eight as simple fraud claims. Faced with Comcast's Motion to Dismiss (R. 3) and the district court's cautionary language relating to same (R. 35), and the realization that the fraud claims were duplicative to the breach of contract claims, Baer's unsuccessfully repackaged Counts Six through Eight as "fraud in the inducement" claims without changing the factual allegations. The Court should not be misled by this transparent attempt to cure claims that warrant summary judgment based on the independent tort doctrine.[2] The district court gave Baer's every opportunity to

---

[2] In addition, even if the fraudulent inducement claims were properly brought, the district court properly noted, in the alternative, that the claims failed "for failure to show 'a false statement concerning a material fact'" (R. 94, 21-22). Specifically, the district court noted that Baer's offered no evidence to show that the DMA schedules did not incorporate Nielsen ratings estimates (R. 94, 21). To the contrary, the district court noted that every indication supports that the DMA schedules did in fact incorporate Nielsen ratings estimates (*Id*.). Nowhere in its brief does Baer's contest this alternative basis upon which the district court entered summary judgment on the fraud claims.

identify a legal or factual basis for their fraud claims against Comcast.  Baer's was unable to do so.

## **CONCLUSION**

For all the foregoing reasons, this Court should affirm the district court's order granting summary judgment in favor of Comcast.

Dated: December 13, 2022            Respectfully submitted,

HOLLAND & KNIGHT LLP
*Counsel for Appellee Comcast*
*Communications Management, LLC*
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Tel. 305.374.8500
Direct fax: 305.789.7799

By:  /s/ *Rebecca Plasencia*
     Rebecca M. Plasencia (FBN 861901)
     Rebecca.plasencia@hklaw.com
     Anna Marie Gamez (FBN 502911)
     annie.hernandezgamez@hklaw.com
     J. Raul Cosio (FBN 503630)
     raul.cosio@hklaw.com
     Jennifer Lada (FBN 119247)
     jennifer.lada@hklaw.com

## <u>CERTIFICATE OF RULE 32(a)(7)(B) COMPLIANCE</u>

1.     This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4, this document contains 7,911 words.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

/s/ *Rebecca Plasencia*
Rebecca M. Plasencia

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 13, 2022, I electronically filed the foregoing document with the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ *Rebecca Plasencia*
Rebecca M. Plasencia

## **SERVICE LIST**

Carlos M. Sires, Esq.
Corey Gray, Esq.
BOISES SCHILLER FLEXNER LLP
*Attorney for Plaintiff*
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, FL 33301
Email: csires@bsfllp.com
Email: cgray@bsfllp.com

37